UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT BISGEIER,

      Plaintiff,

v.                                 Case No. 07-13625
                                 Honorable Patrick J. Duggan

MICHIGAN DEPARTMENT OF
CORRECTIONS, CORRECTIONAL
MEDICAL SERVICES, INC., HAROLD
WHITE, PATRICIA L. CARUSO, GEORGE
PRAMSTALLER, D.O., JUDITH HOWZE, D.O.,
BENCY MATHAI, M.D., DR. EDDIE JENKINS,
DR. UMESH VERMA, DR. ROCCO DEMASI,
DR. CRAIG HUTCHINSON, SAVITHRI
KAKANI, P.A., BEVERLY SAINZ, P.A., and
P.A. FILSINGER,

      Defendants.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on January 25, 2008.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

Plaintiff, a former inmate in the custody of the Michigan Department of

Corrections ("MDOC"), filed this action against Defendants pursuant to state law and 42

U.S.C. § 1983.[1]  In Count I of his complaint, Plaintiff alleges that, while he was

---

[1]A stipulated order dismissing MDOC as a defendant was entered on October 9, 2007.

incarcerated at the Parnall Correctional Facility, Defendants were deliberately indifferent to his medical needs in violation of the Eighth and Fourteenth Amendments. In Count II of his complaint, Plaintiff alleges that Defendants' conduct amounted to "gross negligence, willful, reckless and wanton misconduct." Plaintiff was paroled on December 14, 2006, and he filed his complaint on August 28, 2007.

Presently before the Court are the following motions filed by Defendants:

> •A motion to dismiss or for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) or 56(b) filed by Defendants Correctional Medical Services, Inc. ("CMS"), Dr. Rocco DeMasi, P.A. Kent Filsinger, Dr. Judith Howze, Dr. Craig Hutchinson, Dr. Eddie Jenkins, Savithri Kakani, P.A., Dr. Bency Mathai, and P.A. Beverly Sainz (collectively "CMS Defendants");

> •A motion to dismiss or for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) or 56(b) by Defendant Dr. Umesh Verma;

> •Defendant Harold White's Rule 56(b) motion for summary judgment;

> •Defendant George Pramstaller's Rule 56(b) motion for summary judgment; and

> •Defendant Patricia Caruso's Rule 56(b) motion for summary judgment.

The motions are fully briefed. This Court held a motion hearing on January 23, 2008.

## I.    Applicable Standards

To survive a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must show that his complaint alleges facts

which, if proved, would entitle him to relief. *First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 443 (6th Cir. 2007). "'A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.'" *Weisbarth v. Geauga Park Dist.*, No. 06-4189, 2007 WL 2403659, at *2 (6th Cir. Aug. 24, 2007) (unpublished opinion) (quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997)). Reviewing a motion to dismiss ". . . the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Bledsoe v. Community Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombley*, – U.S. – , 127 S. Ct 1955, 1974 (2007)). "Under general pleading standards, the facts alleged in the complaint need not be detailed, although 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" *Id.* (quoting *Twombley*, 127 S. Ct. at 1964-65).

Pursuant to Federal Rule of Civil Procedure 56, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (quoting FED. R. CIV. P. 56(c)). Rule 56 "mandates summary judgment . . . against a party who fails to make a sufficient

showing to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." *Id.*

## II.    Factual Background

In June 2004, Plaintiff entered the Parnall Correctional Facility ("SMT") to serve a minimum two year sentence. Defendant Harold White is the warden at SMT. In February 2004, before he entered SMT, Plaintiff underwent bariatric surgery. Plaintiff also developed a kidney stone before his incarceration. This information was provided to MDOC before Plaintiff began serving his sentence.

On June 4, 2004, Plaintiff's attorney Neil Rockind sent a letter to Defendant Patricia Caruso, the Director of MDOC, informing her that Plaintiff was suffering from serious medical problems, including complications from his recently performed bariatric surgery. (Pl.'s Resp. to Def. Pramstaller's Mot., Ex. 2.) In his letter, Mr. Rockind enclosed information regarding the treatment Plaintiff required following his surgery. (*Id.*) In a July 13, 2004 letter to Defendant White, Robert and Ellen Altman expressed concern regarding medical and psychological problems Plaintiff was experiencing as a result of his bariatric surgery. (*Id.*, Ex. 1.) Mr. Altman is Plaintiff's brother-in-law and a bariatric surgery consultant. (*Id.*, Ex. 4; Pl.'s Resp. Br. to Def. Pramstaller's Mot. at 1.) Mr. Altman sent a second letter to Defendant White on December 25, 2004, stating that Plaintiff was continuing to have serious medical and nutritional problems. (*Id.*, Ex. 4.) Mr. Altman described in detail the complications that bariatric surgical patients suffer and the treatment they must receive following surgery (e.g. a specific diet regimen high in

protein and low in carbohydrates, exercise, and supplemental vitamins).  (*Id*.)

Plaintiff alleges that no nutritional dietary plan was provided for him when he entered SMT, although he required a high protein and low carbohydrate diet, complex vitamins, and attention to fluid management as a result of his bariatric surgery.  Plaintiff contends that he therefore became weak and dehydrated.  Plaintiff alleges that he then was assigned to the medical care of Defendants P.A. Savithri Kakani and Dr. Bency Mathai, independent contractors of CMS.  CMS is obligated by contract to provide managed healthcare and/or medical care to MDOC prisoners.

On July 22, 2004, Plaintiff was admitted to Duane L. Waters Hospital for severe weakness and dehydration.  He remained at the hospital for over three and a half months.  During this period of time, Plaintiff claims that he suffered from a vitamin and nutritional deficiency and severe dehydration.  He also claims that he developed pneumonia in his left lung which was left untreated and a blood clot in his right leg which was not diagnosed until sometime later.  Defendant Dr. Judith Howze, an independent contractor of CMS, was Plaintiff's physician at Duane L. Waters Hospital.

On November 6, 2004, Plaintiff was discharged from the hospital and returned to SMT.  On December 21, 2004, Plaintiff was sent to Foote Hospital in Jackson, Michigan, where he was diagnosed with pneumonia and treated for a failure to thrive.  At this time, it was discovered that Plaintiff's hemoglobin levels were extremely low and he was diagnosed with anemia.  He alleges that this was due to receiving insufficient vitamins and protein at SMT.  After undergoing three blood transfusions and total parenteral

nutrition therapy, Plaintiff returned to SMT on January 3, 2005.

Plaintiff alleges that when he returned to SMT, he was not referred for adequate medical treatment and that Defendants CMS and CMS employees Drs. Rocco DeMasi and Craig Hutchinson denied him appropriate medical consultations. In January 2005, Plaintiff developed an incisional hernia that grew to the approximate size of a bowling ball. Although requesting that his hernia be repaired and grieving the denial of his requests, Plaintiff's hernia was not repaired until after he was released from prison in December 2006.

Prior to his release, Plaintiff was treated by Defendant CMS independent contractors Dr. Eddie Jenkins, P.A. Kakani, P.A. Beverly Sainz, and P.A. Kent Filsinger. Plaintiff alleges that these medical professionals provided him inadequate treatment for his incisional hernia, vitamin deficiency, blood clot, and kidney stone. Plaintiff further alleges that Defendant Dr. Umesh Verma, who examined Plaintiff on or about March 2005, diagnosed but failed to adequately treat him for neuropathy.

Plaintiff was paroled on December 14, 2006, and he currently remains on parole.

**III.    Applicable Law and Analysis**

**A.    Exhaustion**

In their pending motions, Defendants argue that Plaintiff's lawsuit must be dismissed without prejudice because Plaintiff failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Defendants acknowledge the holding of several courts that the PLRA's exhaustion requirements do not apply to former prisoners. *See, e.g., Michau v. Charleston County*, 434 F.3d 725, 727 (4th Cir. 2006); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005); *Janes v. Hernandez*, 215 F.3d 541, 543 (5th Cir. 2000); *Mabry v. Freeman*, 489 F. Supp. 2d 782, 785 (E.D. Mich. 2007). Nevertheless, Defendants argue that a parolee subject to certain release conditions, such as Plaintiff, remains a prisoner subject to the exhaustion requirements of Section 1997e. In *Greig v. Goord*, 169 F.3d 165 (1999), the Second Circuit held that the PLRA's exhaustion requirements do not apply to prison actions filed by parolees and this Court finds the reasoning in that case persuasive.

The plain language of the statute indicates that its exhaustion requirements do not apply to individuals already paroled at the time they file suit. Section 1997e provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner *confined in* any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis added). The statute defines a prisoner as "any person

*incarcerated or detained in any facility* who is accused of, convicted of, sentenced for, or

adjudicated delinquent for, violations of criminal law or the terms and conditions of

parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h)

(emphasis added). While there may be certain conditions imposed upon Plaintiff as a

parolee, there can be no doubt that he is neither "confined," "incarcerated," nor "detained

in" any jail, prison, or other correctional facility. Moreover, as the *Greig* court indicated,

the legislative history of the PLRA suggests that Section 1997e's exhaustion requirements

do not apply to parolees:

> When introducing the PLRA, Senators Dole and Kyl justified
> treating prisoners differently from other litigants by stating
> that prisoners file frivolous lawsuits because filing lawsuits
> "has become a recreational activity for long-term residents of
> our prisons," and because they "have little to lose and
> everything to gain,". . .

169 F.3d at 167 (quoting 141 Cong. Rec. S7524-26 (daily ed. May 25, 1995)).

At the motion hearing, defense counsel argued that pursuant to the Supreme

Court's holding in *Jones v. Bock*, 127 S. Ct. 910 (2007), it is MDOC's grievance

procedures which determine whether parolees must exhaust their remedies before filing

prison condition actions. As counsel pointed out, the subject of MDOC's grievance

policy is "Prisoner/*Parolee* Grievances." (*See, e.g.*, Def. White's Mot., Ex. 8 (emphasis

added).) However, in *Jones v. Bock*, the Supreme Court did not hold that the prison's

requirements establish *who* must exhaust the prison's grievance procedures before filing

suit. Rather, the Court held that the prison's requirements establish what level of detail is

necessary in a grievance to "properly exhaust" under the PLRA. 127 S. Ct. at 922-23.

The Court therefore holds that Plaintiff was not required to satisfy the exhaustion requirements set forth in the PLRA prior to filing this lawsuit. Defendants therefore are not entitled to dismissal of Plaintiff's claims based on his failure to exhaust MDOC's grievance procedures.

### B. Gross Negligence[2]

#### i. All Defendants

In Count II of his complaint, Plaintiff alleges that Defendants' deliberate indifference to his medical needs while he was incarcerated at SMT amounted to "gross negligence, intentional, willful, reckless and wanton misconduct . . . pursuant to [MICH. COMP. LAWS ANN. §] 691.1407." (Compl. at 12.) Defendants first urge the Court to decline to exercise supplemental jurisdiction over this state law claim and to dismiss the claim without prejudice.

The Court sees no reason to decline supplemental jurisdiction over Plaintiff's state law claim. Pursuant to 28 U.S.C. § 1367, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Plaintiff's gross negligence claim arises from the same case or controversy as his Section 1983. The Court finds none of the basis in

---

[2]On October 9, 2007, the parties stipulated to the dismissal of Plaintiff's gross negligence claim against Defendant Caruso, only.

Section 1367(c) for declining to exercise supplemental jurisdiction present in this matter.[3]

Further, the Court believes that the trier of fact will have no difficulty distinguishing

between Plaintiff's federal and state law claims and that judicial efficiency is better

served by exercising jurisdiction over Plaintiff's state law claim than by dismissing that

claim and requiring him to pursue the related claim in state court.

### ii.    Defendants Pramstaller and White

Defendants White and Pramstaller alternatively seek summary judgment with

respect to Plaintiff's gross negligence claim, arguing that their alleged actions were not

the proximate cause of Plaintiff's injuries.

In Michigan, tort liability of government employees is governed by the state's

Governmental Tort Liability Act, MICH. COMP. LAWS ANN. § 691.1407.  This statute

provides in pertinent part:

> . . . [e]ach officer and employee of a governmental agency,
> each volunteer acting on behalf of a governmental agency,
> and each member of a board, council, commission, or
> statutorily created task force of a governmental agency is
> immune from tort liability for an injury to a person or damage
> to property caused by the officer, employee, or member while
> in the course of employment or service or caused by the
> volunteer while acting on behalf of a governmental agency if
> all of the following are met:

---

[3] 28 U.S.C. § 1367(c) provides that a court may decline to exercise supplemental jurisdiction over a claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

MICH. COMP. LAWS ANN. § 691.1407(2). With respect to subsection (c), the Michigan Supreme Court has interpreted the phrase "the proximate cause" to mean "the one most immediate, efficient, and direct cause preceding an injury." *Robinson v. City of Detroit*, 462 Mich. 439, 458-59, 613 N.W.2d 307, 317 (2000). Under Michigan Supreme Court precedent, there can be only one proximate cause of the plaintiff's injury or damage. *Id*.; *see also Livermore v. Lubelan*, 476 F.3d 397, 408-09 (6th Cir. 2007) (applying same standard).

Even assuming as true the facts alleged in Plaintiff's complaint, *the* most immediate and direct cause of Plaintiff's injuries was the inadequate care allegedly provided by the defendant medical providers– i.e. the doctors and physician assistants working for CMS. Defendants Pramstaller and White did not have personal involvement in decisions regarding the medical care that Plaintiff received by medical staff while he was incarcerated. (Def. Pramstaller's Mot., Ex. 1 at ¶ 4; Def. White's Mot., Ex. 1 at ¶ 3.) The Court therefore concludes that Defendants Pramstaller and White are entitled to summary judgment with respect to Plaintiff's gross negligence claim.

11

### iii.    The CMS Defendants and Defendant Verma

The CMS Defendants and Defendant Verma alternatively seek dismissal of Plaintiff's gross negligence claim, contending that such a claim cannot be brought against employees and independent contractors of a corporation, such as CMS.  It appears to the Court that what the CMS Defendants and Defendant Verma are arguing is that Plaintiff cannot state a cause of action for gross negligence against CMS' employees or independent contractors because MICH. COMP. LAWS ANN. § 691.1407– which Defendants refer to as "the gross negligence statute"–  has been held to be inapplicable to such individuals.

However, Section 691.1407–  which is not a gross negligence statute but Michigan's Governmental Tort Liability Act– does not establish the tort of gross negligence.  Instead, the act merely establishes immunity for government employees for torts committed in the scope of their employment unless their conduct amounts to gross negligence.  In other words, gross negligence is a cause of action that exists independently from Section 691.1407.  As a result, the fact that the CMS Defendants and Defendant Verma may not be covered by Section 691.1407 does not bar Plaintiff's gross negligence claim against them.

### C.    42 U.S.C. § 1983

Lastly, Defendants contend that they are entitled to dismissal of or summary judgment as to Plaintiff's Section 1983 claim because Plaintiff fails to allege specific unconstitutional conduct by each individual named in the complaint.  The CMS

Defendants and Defendant Verma also seeks partial dismissal of Plaintiff's Section 1983 claim pursuant to the applicable statute of limitations to the extent his claim is premised upon conduct accruing before August 28, 2004.

### i. Statute of Limitations

The limitations period applicable to claims brought pursuant to 42 U.S.C. § 1983 is the state statute of limitations controlling personal injury actions. *McCune v. Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988) (citing *Wilson v. Garcia*, 471 U.S. 261, 276-280, 105 S. Ct. 1938, 1947-50 (1985)). The Sixth Circuit has held that Michigan's three year statute of limitations for personal injury claims governs Section 1983 actions when the cause of action arises in Michigan. *Id.* (citing *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986)). Therefore, as Plaintiff filed his complaint on August 28, 2007, any claims accruing prior to August 28, 2004 are time barred.[4]

Plaintiff does not dispute this point. (*See* Pl.'s Resp. to the CMS Defs.' Mot. at 15.) He contends, however, that Defendants' deliberate indifference to his medical needs constituted a violation of his constitutional rights that continued into the limitations period. Pursuant to the continuing violation doctrine, the statute of limitations does not bar events accruing before August 28, 2004 that were part of a continuing violation of Plaintiff's constitutional rights.

---

[4]Federal law governs the question of when a claim accrues. *McCune*, 842 F.2d at 905 (citing *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1982)). As the Sixth Circuit has explained, a claim accrues "when the plaintiff knows or has reason to know of his injury or when he should have discovered it through the exercise of reasonable diligence." *Id.*

The Sixth Circuit, quoting Supreme Court precedent, has described the continuing violation doctrine as follows:

> The continuing violation theory, first articulated by the Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381, 102 S. Ct. 1114, 1125, 71 L.Ed.2d 214 (1982), held that discriminatory incidents which occur beyond the limitations period are actionable "where a plaintiff . . . challenges not just one incident of unlawful conduct . . . but an unlawful practice that continues into the limitations period, in such cases the complaint is timely when it is filed within [the limitations period]."

*Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992). The court has articulated the following test for determining whether a continuing violation exists:

> First, the defendant's wrongful conduct must continue after the precipitating event that began the pattern. . . . Second, the injury to the plaintiff must continue to accrue after the event. Finally, further injury to the plaintiff[] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.*

Contrary to the CMS Defendants' and Defendant Verma's contention, most of the factual allegations in Plaintiff's complaint relate to conduct after August 28, 2004. Plaintiff does allege, however, that when he entered SMT in June 2004, no nutritional dietary plan was provided for him which encompassed his need for high protein and low carbohydrate feedings, complex vitamins, and fluid management. (Compl. ¶ 21.)

Plaintiff also alleges that he was assigned to the care of Defendants Kakani and Mathai when he became weak and dehydrated during the first month of his incarceration. (*Id.* ¶ 22.) Further, Plaintiff alleges that Defendant Howze was deliberately indifferent to his medical needs when he subsequently was hospitalized at Duane L. Waters Hospital on July 22, 2004. (*Id.* ¶¶ 23-27.)

The alleged failure of Defendants Kakani and Mathai to treat Plaintiff's weakness and dehydration before Plaintiff's admission to the hospital constitutes a distinct alleged wrong that occurred outside the limitations period. Therefore, any claim based on this wrongful conduct is barred by the statute of limitations.[5] In comparison, for the reasons discussed below, Plaintiff's claim that he was not provided with a nutritional dietary plan constitutes wrongful conduct that continued throughout his incarceration.

Unlike Defendants Kakani's and Mathai's treatment of Plaintiff's weakness and dehydration on a specific occasion, Plaintiff alleges that he required a nutritional dietary plan and that Defendants never provided such a plan throughout his incarceration. (Compl. ¶¶ 21, 31.) Plaintiff also alleges that he continued to accrue injuries during his incarceration as a result of not receiving the necessary diet and vitamin supplements. (Compl. ¶ 31.) Thus the Court finds that Defendants' alleged failure to provide Plaintiff

---

[5]In his complaint, Plaintiff alleges further misconduct by Defendant Kakani later in his incarceration, during a period which falls within the limitations period. Therefore, the Court's finding does not result in the dismissal of this Defendant. However, Plaintiff alleges no further misconduct by Defendant Mathai in his complaint. Therefore, as will be discussed *infra* in the qualified immunity section, this Defendant is entitled to dismissal.

with a nutritional dietary plan– although first occurring when Plaintiff began his incarceration in June 2004– is not barred by the applicable statute of limitations pursuant to the continuing violation doctrine.

In fact, several courts have held that the statute of limitations commences anew each day prison officials possess the power to do something about a prisoner's medical condition but refuse to do so. *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (holding that prisoner officials' denial of medical care for a prisoner's hernia constituted a continuing violation); *see also Laureano v. Goord*, – F.3d –, 2007 WL 2826649, at *4 (S.D.N.Y. Aug. 31, 2007) (holding that prison officials' indifference to the plaintiffs' mental health care, ultimately resulting in the plaintiffs' suicides, constituted a continuing violation); *Jervis v. Mitcheff*, No. 06-4236, 2007 WL 4355433, at *2 (7th Cir. Nov. 29, 2007) (unpublished opinion) (holding that prison doctor's continued indifference to prisoner's requests to be treated for knee and back injuries suffered during an assault constituted a continuing violation). As Judge Posner explained in *Heard*:

> The district court . . . thought the date of accrual was when the plaintiff discovered that he had a medical problem that required attention. This would be correct if the suit were for medical malpractice. . . . But it is not; malpractice does not violate the Eighth Amendment; instead the suit charges that the defendants inflicted cruel and unusual punishment on the plaintiff by refusing to treat his condition. This refusal continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew. A series of wrongful acts creates a series of claims.

253 F.3d at 318.  According to Plaintiff, he needed a special dietary plan to avoid injury following his bariatric surgery, Defendants failed to provide such a plan throughout the entire period that Plaintiff was incarcerated, and Plaintiff continued to suffer medical problems while he was incarcerated as a result.

With respect to Defendant Howze's alleged indifference to Plaintiff's medical needs while he was hospitalized at Duane L. Waters Hospital, Plaintiff was hospitalized until November 6, 2004.  At this stage in the proceedings, it is not evident what was or was not done and when by Defendant Howze during this time period.  Thus the Court cannot conclude that no misconduct occurred within the limitations period.  At the motion hearing, Plaintiff's counsel indicated that he will dismiss Defendant Howze from this action if information revealed during discovery establishes that she did not engage in any conduct violating his constitutional rights within the limitations period.

### ii. Qualified Immunity

To succeed on a Section 1983 claim, a plaintiff must demonstrate that the defendant was acting under color of state law and that the defendant's conduct deprived the claimant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)). Defendants seek summary judgment with respect to Plaintiff's Section 1983 claim, arguing that they are entitled to qualified immunity.

This Court must employ a two-step test to determine whether Defendants are entitled to qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001). First, viewing the facts in the light most favorable to Plaintiff, the Court must determine whether a constitutional violation occurred. *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004). Second, the Court must determine whether the violation involved a clearly established constitutional right. *Id*. Defendants Caruso, White, and Pramstaller contend that, even if the Court finds that they committed a constitutional violation, the Court should conclude that the violation did not involve a clearly established constitutional right. The remaining Defendants focus only on the first step of the qualified immunity analysis.

Plaintiff alleges that Defendants' conduct violated his Eighth and Fourteenth Amendment rights. As Plaintiff was a convicted prisoner at the time of the alleged misconduct, his Section 1983 claim is properly premised on the Eighth Amendment only.

18

*Doe v. Sullivan County*, 956 F.2d 545, 556 (6th Cir. 1992) (citing *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1087, 1088 (1986)). The Eighth Amendment prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. In the context of prisoners' medical needs, courts find a violation of the Eighth Amendment only where prison officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

An Eighth Amendment deliberate indifference claim consists of objective and subjective components. The objective component requires that the deprivation be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). The subjective component requires the plaintiff to show that the defendants had "a sufficiently culpable state of mind in denying [the plaintiff] medical care." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977). "[A] plaintiff must establish that 'the official knows of and disregards an excessive risk to inmate health or safety,' which is to say 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Clark-Murphy v Foreback*, 439 F.3d 280, 286 (6th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979).

### a.     Defendants Caruso, White, and Pramstaller

First Defendants Caruso, White, and Pramstaller claim that they are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claim because Plaintiff seeks nothing more than to impose respondeat superior liability upon them.  As the Sixth Circuit has advised, Section 1983 liability must be based on more than the mere fact that a defendant is in a position to control employees.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The court has further advised that prison officials are not deliberately indifferent to a substantial risk of serious harm simply because they failed to intervene in decisions made by other prison officials.  In order for supervisory liability to attach, a plaintiff must show the following:

> A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id*. (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).  Supervisory liability may attach where the defendant "'created a policy or custom under which unconstitutional practices occurred or that he [or she] allowed the continuance of such a policy or custom.'" *Brock v. Wright*, 315 F.3d 158, 165 (2d Cir. 2003).  Such liability does not attach, however, "simply because that defendant was a 'policy maker' at the time unconstitutional acts were committed, . . ." *Id*. at 165-66.  The alleged unconstitutional acts must be "*the result* of a policy promulgated by the defendant." *Id*. at 166 (emphasis

in original).

At the motion hearing, Plaintiff's counsel indicated that, at this early stage in the proceedings, he lacks the discovery necessary to respond to Defendants Caruso's, White's, and Pramstaller's motion with respect to Plaintiff's Section 1983 claim. He indicated that, at this time, he only knows that Defendants Caruso and White received letters detailing the seriousness of Plaintiff's ongoing health issues and that they either rejected or ignored the requests for care in those letters. Plaintiff's counsel represented that, if discovery reveals that these Defendants had no active or direct involvement in Plaintiff's medical care other than what is identified above, he will dismiss them from this action.

Based on counsel's representation, particularly in light of the fact that limited discovery has occurred in this case, the Court denies without prejudice Defendant Caruso's, White's, and Pramstaller's motion for summary judgment with respect to Plaintiff's Section 1983 claim.

### b.    The CMS Defendants and Defendant Verma

The CMS Defendants and Defendant Verma seek dismissal of Plaintiff's Section 1983 claim against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Citing paragraph 43 of Plaintiff's complaint, these Defendants argue:

> Plaintiff has not alleged the necessary factual basis for his claim in the pleadings. . . . Although the Complaint contains some allegation of various actions/omissions, it does not identify which, if any, of the Defendants allegedly were responsible for the same. . . . Therefore, not a single

21

> Defendant has been put on notice of what he or she allegedly did.

(CMS Defs.' Br. in Supp. of Mot. at 13; Def. Verma's Br. in Supp. of Mot. at 12.)  In other paragraphs of his complaint, however, Plaintiff provides sufficiently detailed factual allegations to put each of the CMS Defendants and Defendant Verma on notice of what Plaintiff's claim is against them and the grounds upon which his claim rests.[6]

Specifically, Plaintiff asserts that Defendant Howze was his treating physician while he was hospitalized at Duane L. Waters Hospital  and that she failed to consistently evaluate him and provide him with proper medical treatment.  (Compl. ¶ 25.)  Plaintiff claims that when he subsequently was discharged from Foote Hospital and returned to SMT in January 2005, he "was not referred for adequate medical treatment and was denied appropriate medical consultations by Defendants . . . DeMasi . . . Hutchinson and Correctional Medical Services."  (*Id*. ¶¶ 32-33, capitalization omitted.)  Plaintiff further claims that he was being treated by Defendants Jenkins, Kakani, Sainz, and Filsinger prior to his release from SMT "and none of them adequately treated Plaintiff for the incisional hernia, vitamin deficiency, blood clot, or kidney stone."  (*Id*. ¶ 35.)  Plaintiff also alleges that Dr. Verma examined him on or about March 2005, and although diagnosing him with neuropathy, failed to adequately treat him for this condition.  (*Id*. ¶ 36.)  Plaintiff incorporates these allegations in Count I of his complaint, which alleges an

---

[6]In any event, at the motion hearing, Plaintiff's counsel agreed to file an amended complaint with more detail within fifteen days.

Eighth Amendment violation pursuant to 42 U.S.C. § 1983. (*Id.* ¶ 41.) He further alleges in Count I that Defendants' acts and omissions were made "with deliberate indifference to Plaintiff's well-being and disregard of Plaintiff's safety and health, with the wanton intent that Plaintiff suffer the unnecessary and intentional infliction of pain; ..." (*Id.* ¶ 44.)

With respect to Defendant Mathai, however, the only allegation in the complaint specific to this individual is Plaintiff's claim that, sometime before being admitted to Duane L. Waters Hospital on July 22, 2004, Defendant Mathai "did nothing to diagnose or treat [his] weakness and alleviate other symptoms" when Plaintiff became weak and dehydrated. (*Id.* ¶ 22.) For the reasons discussed earlier in the statute of limitations section, Plaintiff is time-barred from bringing a claim against Defendant Mathai based on this alleged misconduct. As Plaintiff alleges no further misconduct by Defendant Mathai, the Court concludes that Defendant Mathai is entitled to dismissal pursuant to Rule 12(b)(6).

## IV.    Conclusion

First the Court holds that, because Plaintiff already was paroled when he filed this action, his claims against Defendants are not subject to dismissal pursuant to 42 U.S.C. § 1997e as a result of his failure to exhaust MDOC's grievance procedures. Second, as Defendants and Plaintiff agree, the applicable statute of limitations bars any claim by Plaintiff based on conduct accruing prior to August 28, 2004 that is not part of a continuing violation. The only claim that falls within this category is Plaintiff's claim in paragraph 22 of his complaint that Defendants Kakani and Mathai did nothing to

diagnose or treat Plaintiff's weakness and dehydration after he was incarcerated but before he was hospitalized at Duane L. Waters Hospital. While Plaintiff alleges later misconduct by Defendant Kakani, this is the only misconduct by Defendant Mathai that Plaintiff alleges in his complaint. Thus Plaintiff fails to state a claim against Defendant Mathai upon which relief can be granted and Defendant Mathai is dismissed from this lawsuit.

Plaintiff's allegations of later misconduct by Defendant Kakani and his allegations of misconduct by the remaining CMS Defendants and Defendant Verma are sufficient to state a Section 1983 violation. These Defendants also have not set forth a reason for this Court to dismiss Plaintiff's gross negligence claim at this time. The Court, however, dismisses Plaintiff's gross negligence claim against Defendants Caruso, White, and Pramstaller, as Plaintiff fails to establish that their alleged misconduct was *the* proximate cause of his injuries. The Court, however, denies without prejudice Defendants Caruso's, White's, and Pramstaller's request for summary judgment with respect to Plaintiff's Section 1983 claim based on the representation by Plaintiff's counsel that discovery is necessary to respond to their request and that he will dismiss these Defendants if discovery reveals that they were not directly or actively involved in Plaintiff's medical care.

Accordingly,

**IT IS ORDERED**, that Defendant Pramstaller's motion for summary judgment is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**;

**IT IS FURTHER ORDERED**, that Defendant Caruso's motion for summary judgment is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**;

**IT IS FURTHER ORDERED**, that Defendant White's motion for summary judgment is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**;

**IT IS FURTHER ORDERED**, that Defendant Umesh Verma's motion to dismiss or for summary judgment is **DENIED**;

**IT IS FURTHER ORDERED**, that Defendant Bency Mathai's motion to dismiss is **GRANTED**;

**IT IS FURTHER ORDERED**, that the motion to dismiss or for summary judgment filed by Defendants Correctional Medical Services, Inc., DeMasi, Filsinger, Howze, Hutchinson, Jenkins, Kakani, and Sainz is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

J. Kelly Carley, Esq.
Joseph K. Carley, Esq.
John L. Thurber, Esq.
Ronald W. Chapman, Esq.
David B. Mammel, Esq.
Charles D. Brown, Esq.
Clyde M. Metzger, Esq.